UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GUADALUPE SANCHEZ,

                    Plaintiff,

         - against -

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY OFFICER
MATTHEW WESTFIELD, and SERGEANT
DAVID LIM,

                    Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
08-CV-1028 (RRM)(CLP)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Guadalupe Sanchez brings this action under 42 U.S.C. § 1983 and New York

state law against the Port Authority of New York and New Jersey ("Port Authority"), Port

Authority Officer Matthew Westfield and Port Authority Sergeant David Lim alleging false

arrest, malicious prosecution, municipal liability and excessive force.  Presently before the Court

are plaintiff's and defendants' cross-motions for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  For the following reasons, defendants' motion is GRANTED,

plaintiff's motion is DENIED and all of plaintiff's claims are DISMISSED.

# BACKGROUND[1]

This is a case of mistaken identity.  On January 10, 2007, plaintiff arrived at JFK International Airport Terminal 4, returning from a trip to El Salvador.  (Def. 56.1 St. ¶ 15.) When a United States Customs and Border Protection ("CBP") agent swiped plaintiff's passport during a routine border check, the CBP computer system indicated that plaintiff's Federal Bureau of Investigation ("FBI") number was associated with an outstanding warrant on the National Crime Information Center ("NCIC") database.  (*Id.* ¶¶ 20-21; Pl. 56.1 St. ¶ 4.)

Plaintiff was then referred to CBP's secondary office, where CBP Officer Sheldon Corchado confirmed that there was an NCIC record for an outstanding warrant issued by New Jersey's Essex County Superior Court.  (Def. 56.1 St. ¶¶ 11, 20, 22-23.)  The NCIC record named "George Gonzalez," but listed plaintiff's FBI number (575-252-LA1).  (*Id.* ¶¶ 11-12, 21; Pl. 56.1 St. ¶ 6.)  The NCIC record also contained a variety of other identifying information regarding "George Gonzalez."  It included:  (1) Gonzalez's year of birth (1964); (2) his height (five feet six inches); (3) his weight (150 pounds); and (4) the last four digits of his social security number (-5634).  (Def. 56.1 St. ¶ 12; Declaration of Karla Denalli, dated Jan. 14, 2011 (Doc. No. 78) ("Denalli Dec.") at Ex. G)  The NCIC report listed "Guadalupe Sanchez" as an alias for "George Gonzalez," and social security numbers ending in -1253 and -6549 and birth year of 1963 as possible alternative identification associated with George Gonzalez.  (*Id.*)

---

[1] The following material facts are taken primarily from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the parties' motions for summary judgment and opposition thereto.  They are undisputed except where noted.  Although both parties submitted a 56.1 statement in support of their motions, in violation of Local Rule 56.1(b), defendants failed to respond to plaintiff's 56.1 statement. Ordinarily, failure to comply with the Local Rules regarding 56.1 statements would result in the material facts of the complying party's statement being deemed admitted for the purposes of the pending summary judgment motion. *See* Local Civil Rule 56.1(c).  A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001); *see also Rateau v. City of N.Y.*, No. 06–CV–4751 (KAM)(CLP), 2009 WL 3148765, at *1 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed).  Accordingly, for the purposes of plaintiff's motion, plaintiff's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

CBP Officer Corchado then proceeded to fingerprint plaintiff and transmitted his fingerprints and photograph to the FBI through the Integrated Automated Fingerprint Identification System ("IAFIS").  (Pl. 56.1 St. ¶ 9; Def. 56.1 St. ¶ 23.)  The FBI's IAFIS report confirmed that plaintiff's fingerprints matched the prints associated with the FBI number on the warrant (575-252-LA1), and provided other information regarding Guadalupe Sanchez, including:  (1) height (five feet six inches); (2) weight (135 pounds); (3) date of birth (January 10, 1963); (4) an alternative date of birth (December 10, 1964); and (5) three different social security numbers (-6549, -5634, -1253).  (Pl. 56.1 St. ¶¶ 7, 10; Denalli Dec. at Ex. F.)  The IAFIS report further listed eleven aliases, including "Gustavo Gonzalez."  (Denalli Dec. at Ex. F.)  The IAFIS report also contained an accurate criminal history for plaintiff and linked plaintiff to the warrant for the arrest of "George Gonzalez."  (Def. 56.1 St. ¶¶ 6-7, 24.)  As discussed more fully *infra*, a number of the identifiers for Gonzalez were consistent with those of Sanchez.

CBP Officer Corchado then advised the Essex County Sheriff's Department ("Essex County") that CBP had a "Guadalupe Sanchez" in custody who matched the person sought by the warrant, and requested a copy of the warrant and an order of extradition.  (Def. 56.1 St. ¶ 26; Declaration of Karla Denalli, dated Apr. 6, 2011 (Doc. No. 83) ("Denalli Dec. II") at Ex. A.) Essex County replied by fax with a brief remark stating that the subject was wanted by Essex County, that Essex County would extradite and asking CBP to "fax prints to [Essex County] to confirm ID."  (Pl 56.1 St. ¶ 17; Denalli Dec. at Ex. P.)  About that same time, Essex County transmitted a copy of the bench warrant, which had, among other information, name (George Gonzalez), date of birth (December 10, 1964), and FBI number (575-252-LA1).  (Def. 56.1 St. ¶ 11; Denalli Dec. at Ex. J.)

CBP Officer Corchado then faxed the NCIC record and plaintiff's IAFIS report to defendant Sergeant David Lim.  (Def. 56.1 St. ¶¶ 27-28.)  Sergeant Lim then also contacted Essex County via teletype requesting confirmation as to whether the warrant was active, whether it was for a felony charge punishable by one or more years in jail and Essex County's willingness to extradite.  (*Id*. at ¶ 29.)  Essex County replied to Sergeant Lim's request by confirming the validity of the warrant for a felony charge that is punishable for more than one year and that Essex County was willing to extradite the subject from Port Authority's jurisdiction.  (*Id*. ¶ 30; Denalli Dec. at Ex. K.)  The same teletype also asked Port Authority to "fax prints to [Essex County] to confirm ID."  (Pl. 56.1 St. ¶ 51.)  It is disputed whether anyone ever sent plaintiff's prints to Essex County.  (*Id.*; Def. 56.1 St. ¶ 26.)

After receiving Essex County's response, Sergeant Lim assigned defendant Port Authority Officer Matthew Westfield to assist him in processing the arrest.  (Def. 56.1 St. ¶ 31.)  Sergeant Lim and Officer Westfield went to CBP's secondary office to take plaintiff into custody in order to process the extradition.  (*Id*.)  At that time, they possessed the NCIC record, the IAFIS report based on plaintiff's fingerprints, a copy of the bench warrant and a copy of plaintiff's passport.  (*Id*. ¶ 32; Pl. 56.1 St. ¶ 44.)  Officer Westfield spoke briefly to plaintiff prior to the arrest.  (Def. 56.1 St. ¶ 33.)  Plaintiff testified that he told Officer Westfield that he was not the person named in the warrant and that he had been mistakenly arrested on the warrant in the past.  (Pl. 56.1 St. ¶¶ 36, 38.)  Officer Westfield testified that he only recalled Sanchez claiming that he was innocent.  (Def. 56.1 St. ¶ 34.)

Officer Westfield then transported plaintiff from the CBP secondary office to the Port Authority police station house by car.  (*Id*. ¶ 33.)  During the transport, plaintiff was handcuffed, with his hands behind his back, for approximately five to ten minutes.  (*Id*.)  Plaintiff testified

4

that he requested to be handcuffed with his arms in the front of his body and that he told the officers that his shoulder "hurt," but his request was denied. (Pl. 56.1 St. ¶¶ 72-73.) Plaintiff also testified that he cried out in pain when the handcuffs were applied. (*Id.*) His shoulder "hurt" because of a preexisting injury, which plaintiff claims was aggravated by the handcuffing and required subsequent medical treatment. (*Id.* ¶¶ 71, 76-78.) Plaintiff was given pain medication for his shoulder while in custody, but apparently as a continuation of the medication he had been taking prior to his arrest. (*Id.* ¶ 75; Pl. Tr. (Doc. No. 78-3) at 54-55.)

At the police station plaintiff was searched, photographed, and fingerprinted. (Def. 56.1 St. ¶ 35.) Officer Westfield sent a teletype to Essex County, informing them that Port Authority would process plaintiff and transport him to Queens Central Booking for extradition. (Denalli Dec. II at Ex. A.) Plaintiff was in Port Authority's custody for approximately ten hours before he was transferred to Queens Central Booking, after which the record does not indicate any further interaction between Sergeant Lim or Officer Westfield and plaintiff. (Def. 56.1 St. ¶ 36; Westfield Tr. (Doc. No. 78-5) at 30-31.)

On January 11, 2007, plaintiff was arraigned in Queens County Criminal Court. (Pl. 56.1 St. ¶ 61.) On January 16, 2007, plaintiff signed a waiver of extradition, and the Queens County District Attorney's office advised Essex County to take custody of plaintiff. (Def. 56.1 St. ¶ 37; Denalli Dec. at Ex. N.) On January 19, 2007, plaintiff appeared before Judge Alex Zigman of Queens County Criminal Court and was released to Essex County Detective John Tully. (Def. 56.1 St. ¶ 37.) On January 22, the Essex County Criminal Records Office issued a statement declaring that after an investigation, plaintiff was determined not to be the person wanted by the warrant. (*Id.* ¶ 38.)

Plaintiff's FBI number was initially assigned to him in connection with an arrest in 1990. (Def. 56.1 St. ¶ 10; Denalli Dec. at Ex. H.)  For reasons not explained in the record, plaintiff's FBI number was added to the warrant for George Gonzalez when the warrant was first entered into the NCIC system in 1993.  (Denalli Dec. at Ex. H.)  In 1995, plaintiff was mistakenly arrested in Suffolk County pursuant to that warrant.  (Pl. 56.1 St. ¶ 38.)  Also for reasons not explained in the record, the error on the warrant was not corrected at that time, resulting in the arrest at issue in this case.

On May 29, 2007, plaintiff initiated this action in the United States District Court for the Southern District of New York.  (Doc. No. 11.)  At plaintiff's request, the case was transferred to this Court on March 12, 2008.  (*Id.*)  On November 8, 2009, plaintiff filed a second amended complaint, alleging false arrest and malicious prosecution under federal and New York law, excessive force under federal law, a claim against the Port Authority under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and *respondeat superior* liability against the Port Authority pursuant to state law.  (Doc. No. 27.)  Presently before the Court are plaintiff's motion for partial summary judgment on the false arrest claims, and defendants' motion for summary judgment on all claims.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted, emphasis in original). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

## DISCUSSION

### I.     False Arrest under 42 U.S.C. § 1983 and New York State Law

The elements of a false arrest claim under 42 U.S.C. § 1983 are "substantially the same" as the elements of a false arrest claim under New York law. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). To establish a claim for false arrest, a plaintiff must show that: (1) defendant

intended to confine plaintiff; (2) plaintiff was conscious of confinement; (3) plaintiff did not consent to confinement; and (4) confinement was not otherwise privileged.  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).[2]

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations and citation omitted); *see also Decker v. Campus*, 981 F. Supp. 851, 856 (S.D.N.Y. 1997) ("If there existed probable cause at the time of the arrest, the arrest is 'privileged,' and the individual has no constitutional or statutory claim against the officer who made the arrest.").  Probable cause exists where "officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).  In order to determine whether probable cause existed, courts must consider the "totality of the circumstances" in light of the facts known to the arresting officer at the time of the arrest.  *See Jenkins v. City of N.Y.*, 478 F.3d 76, 90 (2d Cir. 2007) ("[p]robable cause is, of course, evaluated on the totality of the circumstances"); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) ("Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it.").

---

[2] Port Authority is a bi-state agency created by compact in 1921 between the states of New York and New Jersey with consent of the Congress of the United States.  (Def. 56.1 St. ¶ 1.)  As officers of the Public Safety Department of the Port Authority, Sergeant Lim and Officer Westfield are designated police officers under New York state law. (*Id.* ¶ 3, 5 (citing N.Y. Crim. Proc. Law §1.20(34)(k)); *see also Turturro v. Cont'l Airlines*, 334 F. Supp. 2d 383, 392 (S.D.N.Y. 2004) (treating Port Authority as a "municipality" and its officers as acting under "color of law" for § 1983 purposes).

A mistaken identity can provide the basis for probable cause.  *Hill v. California*, 401 U.S. 797, 802-803 (1971).  If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if:  (1) the police have probable cause to arrest the person sought; and (2) the arresting officer reasonably believed that the arrestee was that person.  *Id.*; *Martinez v. City of N.Y.*, 340 Fed. App'x 700, 701 (2d Cir. 2009); *see also Gonzalez v. City of N.Y.*, 69 Fed. App'x 7, 9-10 (2d Cir. 2003) (arresting officer must have a "reasonable belief" that arrestee was "the person named in the warrant")

Here, Sergeant Lim and Officer Westfield clearly had probable cause to arrest George Gonzalez.  Plaintiff does not challenge that the officers had a facially valid warrant and confirmed extradition based on that warrant.  Therefore, the question is whether Sergeant Lim and Officer Westfield reasonably believed that plaintiff was George Gonzalez.  Upon a careful review of the record, and drawing all reasonable inferences in plaintiff's favor, it is evident that there is no dispute of material fact to preclude summary disposition on this issue in favor of the defendants.

Cross-referencing the information available to Sergeant Lim and Officer Westfield at the time of the arrest, namely the NCIC record, plaintiff's IAFIS report, and a copy of the bench warrant, they had more than ample information to reasonably believe that plaintiff was, in fact, the "George Gonzalez" named in the bench warrant.  Sergeant Lim and Officer Westfield reasonably believed that:  (1) Gonzalez used plaintiff's name, "Guadalupe Sanchez," as an alias; (2) plaintiff's unique FBI number was on the warrant for Gonzalez; (3) Gonzalez's alternative social security number on the NCIC report matched plaintiff's social security number; (4) both Gonzalez and plaintiff were born on the same day of the month with only slight variation in

month and year; (5) Gonzalez is listed as identical height as plaintiff, and similar weight[3]; and (6) plaintiff had been known to use a number of aliases, including "Gustavo Gonzalez." (Denalli Dec. at Exs. G, F, J; Lim Tr. (Doc. No. 78-4) at 38-39.)  Indeed, little contrary information was presented to Sergeant Lim and Officer Westfield.   Plaintiff's allegedly valid El Salvador passport and New York state driver's license indicated that plaintiff's birthday was January 10, 1963 (whereas the warrant for Gonzalez listed December 10, 1964), and both documents were in the name Guadalupe Sanchez. (Pl. 56.1 St. ¶ 7; Denalli Dec. at Ex. J.)  Plaintiff also claimed that he had been mistakenly arrested on the warrant previously.  (*Id.* ¶ 38.)

Given the considerable amount of usually reliable information linking plaintiff to the warrant, the few differences were far "too minor to preclude a finding of probable cause." *Martinez v. City of N.Y.*, No. 06 Civ. 5671(WHP), 2008 WL 2566565, at *1-3 (S.D.N.Y. June 27, 2008) (finding probable cause where first name, last name, middle initial and date of birth of arrestee matched the warrant, despite a difference of "twenty pounds," a "different skin tone," arrestee informing police he had been arrested on the warrant "several times," and despite police never taking fingerprints), *aff'd*, 340 Fed. App'x 700, 701-702 (2d Cir. 2009); *Vasquez v. McPherson*, 285 F. Supp. 2d 334, 341(S.D.N.Y. 2003) (finding probable cause where officer was notified of warrant record matching arrestee's name, description and date of birth); *Gonzalez v. City of N.Y.*, No. 98 CIV 6081 MBM, 2002 WL 252564, at *5 (S.D.N.Y. Feb. 21, 2002) (finding probable cause where computer searches revealed that arrestee's name was an alias used by the fugitive, the arrestee's birthdate matched that of the fugitive, and there was a striking

---

[3] To the extent there was any difference in listed weights, the court finds that difference not compelling.  Plaintiff's own IAFIS report lists his weight as 135 pounds, presumably based on two arrests, the latest of which was ten years before the incident in question.  (Denalli Dec. at Ex. F.)  The NCIC report listed George Gonzalez's weight as 150 pounds, presumably based on information entered fourteen years prior.  (*Id.* at Ex. G.)  On January 10, 2007, plaintiff appears to have weighed around 190 pounds.  (*Id.* at Ex. I.)  Given that plaintiff presented, if anything, as closer in weight to the record for George Gonzalez than to his own record, a reasonable officer was certainly entitled to disregard the difference.

photographic resemblance, despite failure to match fingerprints before initial arrest), *aff'd*, 69

Fed. App'x 7, 9-10 (2d Cir. 2003).

Indeed, the officers were entitled to preference the generally reliable information on the

NCIC and IAFIS reports.  NCIC reports are typically considered reliable and information on

them has often been accepted as reasonable basis to form probable cause for an arrest.  *See*

*Vasquez*, 285 F. Supp. 2d at 341 (collecting cases finding NCIC reports sufficiently reliable to

provide the basis for the reasonable belief necessary for probable cause).  Moreover, Sergeant

Lim and Officer Westfield were entitled to rely on the matching FBI number.[4]  The FBI number

is a unique number assigned by FBI's Criminal Justice Information Services Division.  (Denalli

Dec. at Ex. H.)  It is a commonly used law enforcement tool and there are strict safeguards to

ensure that no two individuals are ever assigned the same FBI number.  *Id.*; *see also Caceres v.*

*Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 623 (2d Cir. 2011) (finding, in a qualified immunity

determination, that officers reasonably relied on a "false hit from the historically reliable

recordkeeping system - - organized by NYSID number," even where the physical description

differed markedly on a John Doe warrant); *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999)

(concluding that arresting officers' reliance on historically reliable warrant recording system was

objectively reasonable).

Plaintiff argues that Sergeant Lim and Officer Westfield should have responded to Essex

County's request for plaintiff's fingerprints.  However, "[o]nce a police officer has a reasonable

basis for believing there is probable cause, he is not required to explore and eliminate every

---

[4] Plaintiff contends that the disclaimer on the IAFIS report that the FBI "cannot guarantee that this record concerns the person in whom you are interested" renders the defendants' reliance unreasonable.  (Pl. Opp'n (Doc. No. 84) at 4; Denalli Dec. at Ex. F.)  Plaintiff's argument is entirely foreclosed, however, by the fact that no one disputes, indeed no one could reasonably dispute, that the IAFIS report, based on Sanchez's fingerprints, is Sanchez's actual IAFIS record.  (Pl. 56.1 St. ¶ 10.)  In other words, the record did concern the actual person arrested, but also had George Gonzalez's warrant mistakenly associated with it.

theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).  At the time of the communications from Essex County, Sergeant Lim and Officer Westfield already had sufficient information to form a reasonable belief that plaintiff was the person sought by the warrant.  Essex County's communications did nothing to change that.  They did not indicate that Essex County was unsure of the identity of the subject, nor that it was a custom for Essex County to conduct a fingerprint comparison before it agrees to extradite, as Sergeant Goldrick states in his affidavit.  (Affirmation of David A. Zelman (Doc. No. 72) ("Zelman Aff.") at Ex. B.)  Rather, they merely confirmed a willingness to extradite, which was necessary for Sergeant Lim and Officer Westfield to process the arrest. *Martinez*, 2008 WL 2566565, at *2-3 (upholding arrest where arrestee claimed mistaken identity and police never fingerprinted him); *Gonzalez*, 2002 WL 252564 at *6 (finding officers were not required to fingerprint defendant prior to arrest where other identifying information, including a "striking similarity" of appearance based on a photograph existed).

Plaintiff argues further investigation was also necessitated by the fact that plaintiff told Sergeant Lim and Officer Westfield that he was innocent, that he told the officers that he had been mistakenly arrested on the warrant previously and that plaintiff's limited English comprehension suggested he would have difficulty explaining himself.  Where, as here, Sergeant Lim and Officer Westfield had probable cause to arrest plaintiff, they were not required to believe his protestations of innocence.  *Martinez*, 2008 WL 2566565, at *3 (finding where defendant informed officers he had been mistakenly arrested on a warrant several times previously it was "reasonable for the Officers not to believe him").   Moreover, as demonstrated by the complaint report, plaintiff was clearly capable of effectively communicating, at the very least, "that is not me."  (Denalli Dec. at Ex. I.)  Even assuming, as plaintiff claims, that plaintiff

also managed to communicate he had been previously mistakenly arrested on the warrant,

Sergeant Lim and Officer Westfield would not have been required to believe him in the face of

the reliable information upon which they based their actions.

Therefore, the Court finds that there was probable cause for plaintiff's arrest.

Defendants' motion for summary judgment on the state and federal claims of false arrest is

granted.  Plaintiff's motion for partial summary judgment on the state and federal claim of false

arrest is denied.[5]

## II.      Unreasonable Detention

Plaintiff argues that under *Russo v. City of Bridgeport*, 479 F.3d 196 (2007), even if there

was sufficient probable cause for his arrest, his subsequent nine day incarceration violated his

Fourth Amendment rights.  In *Russo*, the court considered three factors in assessing the

reasonableness of a suspect's detention:  (1) length of time of wrongful incarceration; (2) ease

with which evidence exculpating arrestee could have been checked; and (3) whether the officer's

action "shock[s] the conscience," that is, was it "intentional" or at least evidence of "deliberate

indifference."   *Id.* at 209-210.  Key to *Russo* was the fact the arrestee was in custody for 217

---

[5] Although plaintiff admits that "[t]he elements of false arrest are substantially the same under Section 1983 and New York law" he argues that where a warrant could apply to "two or more persons or is ambiguous on its face" New York law differs slightly, requiring "due diligence and reasonable care to confirm an arrested person's identity."  (Pl. Opp'n at 7.)  The Court disagrees.  Federal courts applying the "reasonable belief" standard articulated *supra* are applying substantially the same standard as New York courts.  That is, federal courts look to "the law of the state in which the arrest occurred" to analyze § 1983 false arrest claims.  *Davis v. Rodriguez*, 364 F.3d 424, 433-34 & n.7 (2d Cir. 2004); *see also Francois v. United States*, 528 F. Supp. 533, 535 (E.D.N.Y. 1981) (describing the New York test as "an objective one, i.e., whether there was good reason to believe [the arrestee was the person sought]").  Moreover, even if the standard were as plaintiff describes, it is easily met here.  New York courts draw a distinction between "misnomer" cases "where warrants could be applied with accuracy as to two or more persons" and therefore more diligence is required of the arresting officer, and cases where the arrestee is the "sole person to whom the information on the warrant applied."  *Johnson v. Kings Cnty. Dist. Attorney's Office*, 763 N.Y.S.2d 635, 642 (N.Y. App. Div. 2nd Dep't 2003) (finding probable cause where warrant was based on the stolen identity of the arrestee, despite failure to confirm fingerprints until well after the arrest and the fact that the social security number provided by arrestee failed to match the warrant).  Here, the undisputed presence of Sanchez's unique FBI number on the warrant puts this case much closer to the latter category - - where the arresting officers have probable cause because it is the warrant and not the arresting officers that "fail[ed] to accurately determine the true identity of the person named."  *Id.*  However categorized, defendants' work to obtain the NCIC report, a copy of the warrant and the IAFIS report can only be described as "reasonable care."

days while the officers investigating his case "actively hid [] exculpatory evidence" and "attempted to evoke a confession" by "misrepresenting the very evidence of [the arrestee's] innocence that was available to them." *Id.*

However, officers are not required "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); *Martinez*, 340 Fed. App'x at 702 (citing *Baker*, and finding that "[a]lthough officers arguably could have fingerprinted plaintiff, or otherwise investigated his claim of mistaken identity, they were not constitutionally required to do so"). While "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence [may] after the lapse of a certain amount of time," rise to the level of a deprivation, brief periods of detention do not. *See Baker*, 443 U.S. at 145-46 (finding detention of three days insufficient to give rise to a constitutional claim). Here, plaintiff was in the custody of Port Authority for ten hours, at which time he was transferred to the custody of New York City Police Department officers at Queens Central Booking and ultimately arraigned. (Pl. 56.1 St. ¶¶ 58, 61; Def. 56.1 St. ¶ 36.) At arraignment, he was assigned counsel and appeared before a judge who ordered his continued detention. (Zelman Aff. at Ex. F.) It is difficult to see how the initial arresting officers, Sergeant Lim and Officer Westfield, would remain responsible for further investigation once they relinquished custody of him. *See Martinez*, 2008 WL 2566565, at *4 (finding that appearance before a judge who ordered remand and set date for next appearance broke "the chain of causation" for a nine day detention). In any event, the defendants' conduct, given the strong evidence of probable cause and the fact no new evidence had come to light as a result of the officer's investigation of the warrant, could hardly be described as that which shocks the conscience.

Therefore, plaintiff's claim of unreasonable detention is also dismissed.

### III.    Malicious Prosecution under 42 U.S.C. § 1983 and State Law

A § 1983 claim for malicious prosecution requires plaintiff to "demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  A New York law malicious prosecution claim requires the plaintiff to "show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.*; *see also Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010) (malicious prosecution requires instituting an action "without probable cause to believe it can succeed").  The existence of probable cause is "a complete defense to a claim of malicious prosecution." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003).

In the context of a malicious prosecution claim, probable cause under New York law is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Breitbard v. Mitchell*, 390 F. Supp. 2d 237, 246 (E.D.N.Y. 2005) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)).  Although the probable cause inquiry for malicious prosecution is not identical to the probable cause necessary for arrest, where, as here, the actual charge is the same crime that formed the basis for probable cause initially, "[i]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *Parisi v. Suffolk Cnty.*, No. 04-CV-2187(ENV)(ETB), 2009 WL 4405488, at *11 (E.D.N.Y. Nov. 30, 2009) (quoting *Williams v.*

*City of N.Y.*, No. 02 Civ. 3693(CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 Fed. App'x 388 (2d Cir. 2005)); *see also Lowth*, 82 F.3d at 571 ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.").  Nothing in the record supports such a claim.

Here, the ultimate charge on which plaintiff was arraigned was identical to the crime serving as the basis for the probable cause supporting his arrest; that plaintiff was a fugitive.  *See* N.Y. Crim. Proc. Law § 570.34 (requiring "reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year"); Denalli Dec. at Ex. I.  As discussed above, based upon the NCIC report, the IAFIS report, the bench warrant, and Essex County's confirmation of its willingness to extradite and that the crime was punishable by more than one year, Sergeant Lim and Officer Westfield reasonably believed that they had lawful grounds for prosecuting plaintiff under § 570.34.  They were not required to continue investigating, and the record is devoid of any evidence to undermine probable cause surfacing between the arrest on January 10 and the plaintiff's arraignment on January 11.  *See Ricciuti*, 124 F.3d at 128; *see also Johnson v. Constantellis*, 221 Fed. App'x 48, 50-51 (2d Cir. 2007) (finding no malicious prosecution claim where plaintiff merely "repeat[ed] his challenges to the probable cause underlying his arrests" rather than "put forth [] evidence as to how the probable cause that supported his arrests had dissipated").

Therefore, defendants' summary judgment motion on plaintiff's federal and state law claims of malicious prosecution is granted.[6]

---

[6] Plaintiff suggests that the New York law standard for malicious prosecution, like false arrest, is slightly different than the federal standard. (Pl. Opp'n at 13-14.)  As discussed, *supra* at note 5, whether or not that is the case, the Court finds the officers' conduct here established "due diligence and reasonable care."  (*Id.*)

## IV.    Excessive Force under Federal Law

To prevail on a claim of excessive force, a plaintiff must show that the force used by the arresting officer was objectively unreasonable.  *See Graham v. Connor*, 490 U.S. 386, 395-97 (1989).  Whether an officer's actions were reasonable depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396-97.  Moreover, "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion."  *Id.*

"Simply placing a suspect in handcuffs and requiring him to keep his hands behind his back for transportation has been found not to give rise to a constitutional violation."  *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 307 (D. Conn. 2009) (quoting *Scott v. Cnty. of Nassau*, No. 94 CV 4291, 1998 WL 874840, at *5 (E.D.N.Y. Dec. 11, 1998)).  Nevertheless, handcuffing resulting in injury can, in some instances, give rise to a claim of excessive force.  *See, e.g.*, *Gonzalez v. City of N.Y.*, No. 98-CV-3084, 2000 WL 516682, at *4 (E.D.N.Y. March 7, 2000) (denying summary judgment on excessive force claim where during plaintiff's peaceful arrest for driving with a suspended license he was placed in "very tight handcuffs for more than two hours," he "repeatedly complained," and injury resulted).  The reasonableness of the force used may be assessed in the light of the officer's knowledge of a preexisting injury.  *Rosado v. Williams*, No. Civ.A.3:04CV369(JCH), 2006 WL 1168032, at *3-5 (D. Conn. Apr. 26, 2006) (finding that handcuffing arrestee behind her back for over an hour while in a holding cell, despite officer's knowledge of a preexisting shoulder injury, could be excessive force, but nevertheless granting qualified immunity); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) (denying summary judgment on excessive force claim where plaintiff, during an

17

arrest for driving with a suspended license, told officer of her preexisting shoulder injury).

However, "reasonable force does not become unconstitutional merely because it caused the

plaintiff serious injury." *Ferraresso*, 646 F. Supp. 2d at 308 (quotation marks omitted).

Where officers are unaware of a prior injury, in the absence of allegations otherwise

constituting excessive force, no constitutional violation exists. *See Davis v. Callaway*, No.

3:05CV00127 (DJS), 2007 WL 1079988, at *8 (D. Conn. Apr. 9, 2007) (granting summary

judgment where defendant claimed preexisting shoulder injury, but had not informed officers of

such, and there was otherwise "no evidence that the defendants' use of handcuffs . . . was

anything other than proper"); *Scott*, 1998 WL 874840, at *5 ("Without additional allegations of

excessive force or blatant disregard for pre-existing injuries, complaints or requests for medical

treatment, the use of handcuffs has been found to be reasonable."); *Owens v. Colburn*, 860 F.

Supp. 966, 972 (N.D.N.Y. 1994) (granting summary judgment where there was no allegation

arresting officer was aware of arrestee's prior injury), *aff'd*, 60 F.3d 812 (2d Cir. 1995). Even

where officers are aware of a preexisting injury, handcuffing is not automatically unreasonable.

*See Rosado v. Williams*, No. Civ.A3:04CV369(JCH), 2005 WL 2179641, at *3-4 (D. Conn. Sept.

8, 2005) (finding handcuffing reasonable where officer was aware of preexisting shoulder injury

because there was a possibility arrestee was concealing a knife, even though arrestee was

otherwise cooperative).

Here, handcuffing plaintiff was objectively reasonable. Plaintiff's excessive force claim

is based on the fact he was handcuffed behind his back for ten minutes during his transfer from

the CBP secondary office to the Port Authority station. (Pl. 56.1 St. ¶ 74.) He does not make

any allegations of force beyond the fact he was handcuffed. Rather, he testified that he told the

officers that "his shoulder hurt" and that he would like to be handcuffed with his hands in front

of his body instead of behind his back.  (*Id.* ¶ 72.)  He also testified that he cried out in pain when he was handcuffed.  (*Id.* ¶ 73.)  In light of the extremely brief nature of the restraint, the lack of any allegations suggesting that more than *de minimis* force was used, the vague testimony of the officer's knowledge of plaintiff's prior injury, and the fact defendants reasonably believed that plaintiff was a fugitive from a felony warrant, the Court finds the handcuffing objectively reasonable.

Therefore defendants' motion for summary judgment as to plaintiff's excessive force claim is granted.

### V.     Qualified Immunity

Because the Court has already concluded that defendants had probable cause for arrest and prosecution, and that no excessive force was used, it need not reach the issue of qualified immunity.  Nevertheless, the Court finds that the individual defendants would also be entitled to qualified immunity.

### a.   False Arrest and Malicious Prosecution

Even assuming there was a constitutional violation an officer is nonetheless entitled to qualified immunity if "it was objectively reasonable for the [officer] to believe that his action did not violate such law."  *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir. 1999) (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998)).  For false arrest claims, qualified immunity is appropriate where:  (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest; or (2) reasonably competent officers could disagree as to whether there was probable cause to arrest.  *Caceres*, 631 F.3d at 622.

As discussed extensively above, it was objectively reasonable for Sergeant Lim and Officer Westfield to believe that plaintiff was the person sought by the warrant.  Moreover, the

Second Circuit has recently found qualified immunity under similar, but less compelling circumstances than those here. *See Caceres*, 631 F.3d at 622-23 (finding qualified immunity appropriate where an arrest was made pursuant to John Doe warrant associated with arrestee due to a mistake with his assigned New York State Identification Number, despite significant discrepancies in physical description).

As it was objectively reasonable for Sergeant Lim and Officer Westfield to believe that there was probable cause to arrest plaintiff, they must also be entitled to qualified immunity on the malicious prosecution claim, since "there is no evidence that [they] learned any new information [] that would make the decision to charge" an objectively unreasonable one. *Jean v. Montina*, 412 Fed. App'x 352, 354-55 (2d Cir. 2011); *see also Rogers v. City of Amsterdam*, 303 F.3d 155, 159 (2d Cir. 2002) (finding qualified immunity appropriate where reasonable officers could disagree over whether there was probable cause to arrest and "nothing occurred between the arrest and prosecution to alter this"). [7]

### b.  Excessive Force

An officer is entitled to qualified immunity from an excessive force claim unless " it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stephenson v. Doe*, 332 F.3d 68, 77-78 (2d Cir. 2003) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.") (quotation

---

[7] Neither party addresses the applicability of qualified immunity to the parallel state law claims for false arrest and malicious prosecution. Nevertheless, New York law does recognize a similar doctrine. Where qualified immunity applies to federal false arrest and malicious prosecution claims, it is also generally appropriate to dismiss the state analogs. *See Jenkins*, 478 F.3d at 86-87 (finding that where defendants are "entitled to qualified immunity under federal law, summary judgment would be similarly appropriate" on state law false arrest claim); *Johnson v. City of N.Y.*, No. 05 Civ. 7519(PKC), 2011 WL 2693234, at *4 (S.D.N.Y. June 30, 2011) ("New York courts also recognize the defense of qualified immunity to state law claims of malicious prosecution. The defendant's entitlement to New York State qualified immunity is similar to federal qualified immunity." (citation omitted)); *Arzeno v. Mack*, 833 N.Y.S.2d 480, 481-82 (N.Y. App. Div. 1st Dep't 2007) (finding qualified immunity appropriate for malicious prosecution claim where actions were "reasonably based [and] no bad faith was shown"). Therefore, the Court finds Sergeant Lim and Officer Westfield are also entitled to qualified immunity on the state law false arrest and malicious prosecution claims.

marks omitted).  Even assuming that handcuffing plaintiff for ten minutes constitutes excessive force in these circumstances, Sergeant Lim and Officer Westfield are entitled to qualified immunity for their mistake.  A reasonable officer would not have realized that such *de minimis* force for such a limited duration, used on a suspected fugitive, would be unlawful in the face of vague complaints about shoulder pain.  *Rosado*, 2006 WL 1168032, at *4-6 (finding qualified immunity appropriate where officer handcuffed arrestee behind her back for over an hour while in a holding cell awaiting a female officer to perform a secondary search for weapons, despite officer's knowledge that arrestee had a preexisting shoulder injury).  Indeed, qualified immunity is specifically designed to protect officers from the sometimes "hazy border between excessive and acceptable force."  *Id.* (quotation marks omitted).

## VI.   Plaintiff's Claims against Port Authority

Initially, because the Court has dismissed all of plaintiff's § 1983 claims, there can be no liability under *Monell*.  *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a *Monell* claim); *Graham v. City of N.Y.*, No. 08–CV–3518 (KAM)(RML), 2011 WL 3625074, at *13-14 (E.D.N.Y. Aug. 17, 2011) (finding where there was no constitutional injury there was no *Monell* claim).  Therefore, plaintiff's *Monell* claim must be dismissed.

Even assuming plaintiff suffered a constitutional violation, plaintiff's municipal liability claim would still fail.  To hold a municipality liable under § 1983, plaintiff must demonstrate that a municipal policy or custom caused the violation of plaintiff's constitutional rights.  *Wray v.*

*City of N.Y.*, 490 F.3d 189, 195 (2007); *see also Monell*, 436 U.S. at 694. For a *Monell* claim

based on a failure to train, that failure must "amount[] to deliberate indifference to the rights of

persons with whom the police contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

(1989). Deliberate indifference exists where: (1) a policymaker knows to a moral certainty that

officers will confront a particular situation; (2) the situation presents the type of difficult choice

that training or supervision will make less difficult, or there is a history of employees

mishandling the situation; and (3) the wrong choice by the employee will frequently cause the

deprivation of a citizen's constitutional rights. *Wray*, 490 F.3d at 195-96 (citing *Walker v. City

of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992)). However, "the focus must be on the adequacy of

the training program" because the fact "[t]hat a particular officer may be unsatisfactorily trained

will not alone suffice to fasten liability on the city, for the officer's shortcoming may have

resulted from factors other than a faulty training program." *Harris*, 489 U.S. at 390-91.

  Plaintiff has presented virtually no evidence about the Port Authority's training. Rather,

he relies on Sergeant Lim's testimony that he followed guidelines "passed on to [him] by

sergeants when [he] first came to Kennedy Airport" and that "as far as [he knew], there are

written guidelines" but that he was "not sure." (Lim Tr. (Doc. No. 78-4) at 9.) Plaintiff then

completely ignores or mischaracterizes most of the ensuing discussion about what Sergeant Lim

actually does - - which is admittedly not entirely clear - - based on that training. (*Id.* at 10-15.)

Plaintiff has established essentially nothing about the Port Authority's training practices.

Plaintiff may find what was done in this particular situation by this particular employee

problematic, but he has wholly failed to establish anything beyond that a "particular officer may

be unsatisfactorily trained," which "will not alone suffice to fasten liability." *Harris*, 489 U.S. at

390-91; *Richards v. City of N.Y.*, 433 F. Supp. 2d 404, 429-430 (S.D.N.Y. 2006) (granting

22

summary judgment where plaintiff provided "no evidence as to when [defendant] conducted training programs, how they were conducted, [or] whether better or different training could have prevented the conduct").[8]

Therefore, defendants' summary judgment motion to dismiss plaintiff's claims against the Port Authority is granted.[9]

## CONCLUSION

For the reasons stated herein, the defendants' motion for summary judgment (Doc. No. 76) is GRANTED, plaintiff's motion for partial summary judgment (Doc. No. 70) is DENIED and all of plaintiff's claims are DISMISSED.  The Clerk of Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
       March 29, 2012

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[8] Plaintiff's complaint also refers to municipal liability for excessive force and for malicious prosecution.  (Second Am. Compl. (Doc. No. 27.) ¶¶ 45-48, 55-61.)  Plaintiff never elaborates on these claims in his briefing, and has presented no evidence to support them.  Therefore, they are also dismissed.
[9] Plaintiff also asserts a claim based on *respondeat superior*.  Because such claim is merely an avenue to establish vicarious liability, it cannot survive the dismissal of all substantive claims.  *Donelli v. Cnty. of Sullivan*, No. 07 Civ. 2157(JGK), 2009 WL 2365551, at *12 n.10 (S.D.N.Y. Jul. 31, 2009).  Therefore, it is also dismissed.